US DISTRICT COURT - NH

Grace Woodham, plaintiff         v.    Audrey Hall
PO Box 842 Center Conway NH              130 Dow Franconia NH 03850
                         03813

FILED - USDC - NH
2021 JUL 30 AM 11:28

federal question                 please merge with Woodham v. Scheffer
~~jury trial requested~~                          case cv-304-LM

# COMPLAINT

Facts: Over the course of Winter-Spring 2019, defendant Audrey Hall conspired with police officer Martin Cashin to have me incarcerated in order to break up the relationship between me and her roommate Tucker Scheffer, who supports her financially. This is a ~~Due Process~~ Equal Protection Claim.

2. Hall sometimes refers to Scheffer as her "boyfriend" but they're not romantically involved which she's admitted to me upfront. In her own words, "I'm only here for the free rent and summer car & living with a 'goober' & more or less we just go our separate ways."

3. When Hall didn't succeed at defaming me she created a narrative that I was somehow "stalking" or "harassing" her by calling her at work, or visiting him. It's unclear if she really believes this and this is merely a symptom of some underlying personality disorder or mental illness or rather some cynical ploy to help me go away indefinitely. The truth probably lies somewhere between the two.

4. In February 2019, after I'd paid Scheffer a visit & ran into Hall instead, she pressured him into lying on a police report that I was "harassing" her and had been instructed to leave them both alone. Call records & email exchanges impeach this.

5. She also perjured/suborned perjury on an emergency, temporary & final protective order, which appears to have been prompted by a piece of garbage found in her car. At ~~one point police were~~ claiming it was a bottle bomb, but later retracted this.

6. Despite the hard evidence being at odds with Hall's statements, Officer Cashin was for some reason sympathetic to her and so launched a wholly frivolous investigation into my alleged terroristic activities. After he facilitated an emergency protective order on me, he slandered me in a series of warrants which were by & large perjured, thereby influencing the judge who issued the final order.

7. It appears the purpose of of filing these orders was not to protect the "victim" but rather to break up ~~whatever~~ anemic, frankly laughable romantic relationship I had with him. This is malicious abuse of process. Cashin bizarrely seemed to have ~~bizarrely~~ positioned himself as Morality Police, Homewrecker Edition, which is inappropriate, and not his job.

8. Hall was instrumental in bringing the investigation to focus on me, telling Cashin she knew I'd put the bomb in her car and she couldn't think of who else it could be. She then continued to call him every week citing what she claimed were instances of me breaking the protective order on Schaffer. Petitioner believes her influence was a major factor in the State choosing to revoke my bail, when there was no evidence I was genuinely dangerous to either of the so-called "victims".

9. Hall seemed to believe I'd been calling Mr Schaffer's home phone constantly & represented to both the Schaffers & the police that I was "harrassing" him. At this period of time she was laid off from her seasonal job at Cranmore and had nothing better to do, it seemed, than indulge in wet dreams about having me arrested and prosecuted. Her predilection for frivolous accusations & legal threats even caused the Schaffers to undergo a kind of physical breakdown from emotional stress, and, apparently not sure how to proceed, tried to cut contact with me in order to appease her.

10. She also made allegations that I'd broken into his house and put turpentine into their run while I was on the way to a hearing? None of this has been corroborated by independent witnesses.

11. Over the course of Spring 2019 I received a series of communications either from or believed to be fr. Hall which could be construed as threatening, and certainly cemented my impression that she intended to use the criminal justice apparatus to "hold onto her man." I reported these to Conway PD, and the denied them.

12. Cynically, she continues to insist that she is the one victimized by this series of events. In January 2021, when I wrote to Tucker Schaffer's lawyer disclaiming that I was upset about the allegations and certainly never intended to hurt him, she put another protective order on me, demanding I pay for her therapy. Because this wasn't substantiated by the facts it was eventually dismissed. Unlike her, I do have documented PTSD from being harrassed, stalked & brutalized by her town cop.

RELIEF: On 6/3/2019, according to bodycam evidence, Ofc. Cashin & Dube instructed Hall & Schaffer to report immediately to them if there was any evidence that I had broken the frivolous, and ultimately void protective order they had placed on me. They bragged that if I did so, they could have me arrested immediately & sent to jail. There appears to state an agency relationship, worth § 1983 liability.

B. It also seems that, conversely, Ofc Cashin had an agency relationship with Hall, as he appeared moved by her crocodile tears & other histrionics, and beyond that point was entirely deaf to any witness testimony which conflicted with her version of events.

C. For example he seemed to accept without questioning her claims that I'd been "harrassing" her by mail. For example, when I'd come to visit Schaffer that February only to listen to Audrey rant on about how I was a "whore" who had had an "affair" with him, I left her a short note explaining (helpfully, I thought) that Tucker was a closet homosexual and I had given him the ass-pounding he'd always craved. She told Cashin that I was impersonating a neighbor & spreading rumors that he'd been raped by gay men, and I said this purely to upset her.

D. Ostensibly she's never heard of sex or four-letter words before, which is curious, as she said plenty to me. Anyhow, since these allegations eventually wormed their way into a search warrant, she is the proximate cause for violation of my Due Process rights, as well as assault, false imprisonment, interference with econ. relationships, emotional distress, possible 4th Amendment & Equal Protection too.

E. Enduring Audrey Hall's pointless emotional abuse states an intentional/negligent infliction of emotional distress claim. It's difficult enough for me to be in any sort of relationship to begin with given that I have severe trauma from early childhood physical/sexual abuse, never mind putting up with this crap. I spend the better part of the month of April 2019 crying myself to sleep and choking up my meals between oxycodone-induced comas. Despite the sexist trope about hopeless, desperate love, this was just "trauma stuff," which was only peripherally related to the gl'mon image.

F. Somehow she was able to enlist Scheffler as a willing, or at least unwitting accomplice, and he seemed all-too-eager to do her dirty work for her. Was he confused, or willfully blind? Anyway, she's liable for suborning of perjury & the relevant torts of false imprisonment, trespass, conversion, assault stemming from the ensuing investigation, prosecution & arrest. Should we continue in the agency relationship analysis perhaps there could be Due Process 4th amendment torts as well.

G. Placing a protective order on me over a bar of friggin soap (which, according to the paranoid morons at NH Bomb squad looks like a bar of C4 plastic explosive if you squint hard enough) is per se infliction of emotional distress. Someone with the DA's ear subsequently convinced the jail to heavily monitor my communications which led in turn to a barrage of 1st & 4th amendment torts, access-to-court issues, which I've largely documented in Woodham v. GCDC et al (1194-JL). The evidence may prove she has some liability; in any case she wasted my time with this dumb fuckin protective order hearing, which, of course, was both perjured & inherently void. Is nuisance a legitimate tort under NH common law? I certainly have a case for malicious prosecution.

H. Hall's motive in this series of events was elesely to break up my relationshitttt with my emergency contact, mechanical skills mentor, and on & off fucktoy Tudor Scheffler. It's unclear why she'd consider me a genuine threat to getting free money from dumb (slightly autistic) guys, because I didn't fucking care about her, so long as she didn't slander me to my friends, and create stupid, unnecessary dramas. Anyhow, I didn't even have to go to the effort of deducing this because she said as much directly to my face; also that I was going to "bring him down with [me] in his career," whatever the fuck that means.

I. The last I heard Mr. Scheffler was paying for her counselling so she could come to grips with her repressed memories of whatever self-inflicted trauma she claimed she was experiencing. Arguably, were I not in jail, he'd be diverting his resources to me, and I wouldn't be exposing myself to police harrassment & brutality out of desperation to get a referral to accessible medical treatment. I guess this is a loss of consortium claim? and perhaps also a breach of marriage promise because I was getting proposals (& not just when he was inside of me).

J. Finally she's liable for false imprisonment, assault, intentional infliction of emotional distress, and the relevant § 1983 4th & 14th Amendment claims (again, under the agency analysis) for any time I may have served as a result of allegedly violating her protective order. Obviously this extends to any abuse I've had to endure while incarcerated as well as loss of wages & training opportunities.

DAMAGES: I'm suing Audrey in her personal capacity for compensatory & punitive damages under 42 USC § 1983, §§ 1331(1) & § 1343, 28 USC § 1367

I swear under penalty of perjury the foregoing is true to the best of my knowledge.
Mailed to US Court D-NH        by Lex Grace Woodham, pro per

## Canadian Consensus Criteria for Myalgic Encephalomyelitis [3] = Chronic Fatigue Syndrome

| | | |
|---|---|---|
| \multicolumn{3}{l}{A patient with ME/CFS will meet the criteria for fatigue, post-exertional malaise and/or fatigue, sleep dysfunction and pain; have two or more neurological/cognitive manifestations and one or more symptoms from two of the categories of (a) autonomic, (b) neuroendocrine and (c) immune manifestations; and adhere to item 7.} |
| 1 | Fatigue Required | The patient must have a significant degree of new onset, unexplained, persistent, or recurrent physical and mental fatigue that substantially reduces activity level. |
| 2 | Post-Exertional Malaise and/or Post-Exertional Fatigue Required | There is an inappropriate loss of physical and mental stamina, rapid muscular and cognitive fatigability, post-exertional malaise and/or post-exertional fatigue and a tendency for other associated symptoms within the patient's cluster of symptoms to worsen.<br><br>There is a pathologically slow recovery period — usually 24 hours or longer. |
| 3 | Sleep Dysfunction* Required | There is unrefreshing sleep or sleep quantity or rhythm disturbances such as reversed or chaotic diurnal sleep rhythms. Note that patients without sleep dysfunction can still meet the diagnostic criteria if their illness began with an infection — see * below. |
| 4 | Pain* Required | There is a significant degree of myalgia. Pain can be experienced in the muscles, and/or joints, and is often widespread and migratory in nature. Often there are significant headaches of new type, pattern or severity. Note that patients without pain can still meet the diagnostic criteria if their illness began with an infection — see * below. |
| 5 | Neurological / Cognitive Manifestations Two or more | Two or more of the following difficulties should be present:<br><br>• Confusion<br>• Impairment of concentration and short-term memory consolidation<br>• Disorientation<br>• Difficulty with information processing, categorizing and word retrieval (Word-finding problems)<br>• Perceptual and sensory disturbances (for example spatial instability and disorientation and inability to focus vision)<br><br>Ataxia, muscle weakness and fasciculations are common. There may be overload[1] phenomena: cognitive overload, sensory overload (for example photophobia and hypersensitivity to noise) and/or emotional overload, which may lead to crash[2] periods and/or anxiety. |
| 6 | At Least One Symptom From Two of the Following Three Categories (autonomic, neuroendocrine, immune) | At Least One Symptom From Two of the Following Three Categories:<br><br>**(a) Autonomic Manifestations**<br><br>• Orthostatic intolerance (either neurally mediated hypotension, postural orthostatic tachycardia syndrome or delayed orthostatic hypotension)<br>• Light-headedness<br>• Extreme pallor<br>• Nausea and irritable bowel syndrome<br>• Urinary frequency and bladder dysfunction<br>• Heart palpitations with or without cardiac arrhythmias<br>• Exertional dyspnea<br><br>**(b) Neuroendocrine Manifestations**<br><br>• Loss of thermostatic stability (subnormal body temperature and marked diurnal fluctuation)<br>• Sweating episodes, recurrent feelings of feverishness<br>• cold extremities (cold hand and feet)<br>• Intolerance of extremes of heat and cold<br>• Marked weight change (anorexia or abnormal appetite)<br>• Loss of adaptability and worsening of symptoms with stress<br><br>**(c) Immune Manifestations** |

Exhibit B

# DRC DISABILITY RIGHTS CENTER - NH

64 North Main Street, Suite 2, Concord, NH 03301-4913 • mail@drcnh.org • drcnh.org
(603) 228-0432 • (800) 834-1721 voice or TTY • FAX: (603) 225-2077

**ATTORNEY-CLIENT PRIVILEGED COMMUNICATION**

May 7, 2020

*[handwritten margin notes:]* refusing to allow me to see doctor, don't allow doc to speak to parents, nurses lie to doctor, accuse me of diverting meds w/o any evidence, influence rx decisions b/c "safety", refuse reasonable compromises like changing delivery protocol, doctor refuses to give me meds unless I "rehouse"

Grace Woodham
Grafton County Dept. of Corrections
3787 Dartmouth College Highway
North Haverhill, NH 03774

Dear Ms. Woodham:

    I received two letters from you, the later one containing responses to the questionnaire I sent to you. Thank you for providing me with that information. I have reviewed all of the information you provided. Unfortunately, we are not able to assist you at this time.

    Due to our limited number of staff and resources, we are only able to consider cases for representation that fall within the priorities set by our Board of Directors, currently listed on our website at www.drcnh.org. The issues with which you have said you would like assistance do not fall within those priorities. Therefore, we are not able to help you with this issue.

    If you would like to try to find a private attorney for assistance, you can contact the Lawyer Referral Service at 603-715-3281, which is their number specifically for inmates who need to call collect. The regular number is (603) 229-0002.

    I am sorry we are not able to assist you at this time. If you disagree with this decision, you may file a grievance pursuant to the enclosed grievance policy.

Sincerely,

Courtney Lockwood ALB
Courtney Lockwood
Senior Intake Attorney

*[handwritten upside-down notes:]*
CO3 CO25
Indicates of infection?
Enc. 1 - calls not Call Mich
Reorganize box
Confirm w/ Kara did put 54/45
Cocunr virus check

Enc.

*Protection and Advocacy System for New Hampshire*

# DL&G  DOUGLAS, LEONARD & GARVEY, P.C.

ATTORNEYS

Charles G. Douglas, III*
C. Kevin Leonard
Carolyn S. Garvey
Benjamin T. King**
Megan E. Douglass
Jared J. Bedrick
Samantha J. Heuring

14 SOUTH STREET, SUITE 5
CONCORD, NEW HAMPSHIRE 03301

Telephone: 603-224-1988
Facsimile: 603-229-1988
Email: mail@nhlawoffice.com
www.nhlawoffice.com

\* also admitted in MA
\*\* also admitted in ME

September 2, 2020

Grace Woodham
Grafton County Dept. of Corrections
3787 Dartmouth College Hwy.
North Haverhill, NH 03774

Dear Ms. Woodham:

    Thank you for having contacted the Law Office of Douglas, Leonard & Garvey P.C. We are sorry to hear about your legal situation.

    Unfortunately, this office cannot be of assistance to you at this time. In declining to represent you in your legal matter, please understand that we will not be taking action on your behalf and we are <u>not</u> expressing any opinion concerning the merits of your case.

    If you ever have need of legal assistance in the future we hope that you will think of us again in that context. We wish you the best of luck in the future.

Sincerely,

*Samantha J. Heuring*
Samantha J. Heuring

# Law Office of Jonathan B. Sistare, PLLC

P.O. Box 213
Dublin, NH 03444
Telephone: (603) 338-9300
Fax: (603) 218-6287
jsistare@sistarelaw.com
www.sistarelaw.com

October 5, 2020

Ms. Grace Woodham (Inmate)
c/o Grafton County HOC
3787 Dartmouth College Hwy
North Haverhill, NH 03774

Re: Your Case

Dear Grace:

First, please understand when you try to call me the phone never rings when it comes from the number you call. I don't know why. It happens when other inmates call from other jails as well. So, I can see that you called, but I can't call you back and there is no need for you to call more than once.

With regard to your internal discipline file, I cannot get access to it at this point. The jail will only release it upon receipt of a subpoena. I cannot issue a subpoena until there is a case filed, and I cannot file a case until we are able to speak in more detail.

Therefore, I go back to my original request to wait until you are released so that we can speak more often and more freely. Please call me upon your release. Thank you.

Sincerely,

Jonathan Sistare